```
                  UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF WEST VIRGINIA

                           AT CHARLESTON
```

UNITED STATES OF AMERICA

       Plaintiff,

v.                                      Civil Action No. 2:14-17685

0.64 ACRE OF LAND, MORE OR LESS,
SITUATE IN LOGAN COUNTY,
STATE OF WEST VIRGINIA, and
W. P. HENRITZE,

       Defendants


UNITED STATES OF AMERICA

       Plaintiff,

v.                                      Civil Action No. 2:14-17688

0.19 ACRE OF LAND, MORE OR LESS,
SITUATE IN LOGAN COUNTY,
STATE OF WEST VIRGINIA, and
W. P. HENRITZE,

       Defendants.


## MEMORANDUM OPINION AND ORDER

       Pending is the United States' motions to withdraw its jury demands in these consolidated actions, filed February 9, 2015. It is ORDERED that the motions to withdraw be, and hereby are, granted.

On May 26, 2015, the court conducted a bench trial. No interested party, and no party other than the United States, appeared for trial.

## I. FINDINGS OF FACT

The following discussion represents the court's findings of fact. Each finding is made by a preponderance of the evidence.

On June 5, 2014, the United States instituted the above-styled condemnation actions seeking to take the named parcels of property. The take will facilitate implementation of the Island Creek Flood Damage Reduction Project on the Island Creek channel of the Guyandotte River. On March 11, 2015, the cases were consolidated.

Various individuals and entities having a potential property interest in the parcels which are the subject of this consolidated condemnation proceeding were notified of the matters by certified mail and by publication. Attached to the complaints in condemnation in both cases at schedule E are lists of potentially interested parties. They are as follows:

> Unknown heirs, executors, administrators, devisees, legatees and assigns of W.P. Henritze, deceased.
>
> Billie Jean Henritze Nance, Widow

    **Betty Jane Henritze Ayers, Widow**

    **John Clarke Wallace, Jr., Co-Trustee,**
    **Katherine Osborne Wallace, Co-Trustee,**
    **John S. Henritze Testamentary Trust**

    **John Clarke Wallace, Jr.**

    **Jayne Dalziel Wallace**

    **Susan Stuart Wallace (care of her attorney in fact)**

    **Katherine Osborne Wallace**

    **West Virginia Real Estate (.64) or H3, LLC (.19)**

    **Logan County Assessor**

    **The United States has certified that it published notice to the unknown heirs, executors, administrators, devisees, legatees and assigns of W.P. Henritze and the unknown spouse of W.P. Henritze inasmuch as a diligent inquiry and search for those individuals did not produce their whereabouts. Specifically, on August 12, 2014, the United States filed an affidavit of publication from Norman O. Sinclair, Regional Director of the Logan Banner.  Mr. Sinclair averred that the notice, addressed to the heirs of W.P. Henritze and the unknown spouse of W.P. Henritze, was published in the <u>Logan Banner</u> three successive times, namely, on July 23, July 30, and August 6, 2014.  The court finds that all interested parties have been given notice and an opportunity to be heard.  The only party which has responded to the complaint in condemnation or**

otherwise appeared herein is the Auditor of the State of West Virginia, who was dismissed by agreed order on September 24, 2014.  Additionally, Logan County will not seek to collect any delinquent taxes on the subject properties.[1]

The United States desires to take the fee simple interests in the subject properties, for use in activities involved in the construction, repair, and rehabilitation of the Island Creek Flood Damage Reduction Project.  In the **.64** case, the parcels being taken, as platted on Schedule D to the complaint in condemnation, consist of lots 218, 218-2, 218-3, and 218-4.  The legal description of the parcels is found in the declaration of taking, which was also filed June 5, 2014.  On June 9, 2014, the court authorized the United States to deposit a check in the amount of $8,250 as estimated just compensation for the taking of the estates and interests proceeded against.  That sum is presently being held in the registry.

In the **.19** case, the parcel being taken, as platted on Schedule D to the complaint in condemnation, consists of lot 231.  The legal description of the parcel is found in the

---

[1] On July 13, 2015, at the court's request, the United States filed a declaration that no property tax liability exists.  It attached a letter from the Logan County Assessor's Office, stating, <u>inter alia</u>, "The purpose of this letter is to assure you that Logan County will . . . not make any claim for back taxes on this property."  (Ex. A at 1).

declaration of taking, which was also filed June 5, 2014. On June 9, 2014, the court authorized the United States to deposit a check in the amount of $2,000 as estimated just compensation for the taking of the estates and interests proceeded against. That sum is presently being held in the registry. Following deposit of the just compensation amounts in both cases, the court ordered on July 25, 2014, that fee simple title and possession in tracts 218, 218-2, 218-3, 218-4 and 231 be delivered to the United States.

      The United States presented at trial the expert testimony of George Thornbury, a duly qualified and licensed real estate appraiser. Mr. Thornbury's expert testimony was left unchallenged. Mr. Thornbury used the comparable sales method to determine the fair market values of the properties which were the subjects of these consolidated actions.

      Mr. Thornbury testified that Tract No. 218 consisted of .27 acres. Approximately .21 acres of that property was usable and .06 acres was not usable as it was creek bank and also partially submerged in the creek. Mr. Thornbury testified that the property was unimproved, in the floodplain, partially underwater, had no practical vehicle access, and had been unused for years except by individuals driving four-wheelers and recreational vehicles over the property. He determined that the

highest and best use of the property was for recreational use. Mr. Thornbury testified that the fair market value of that property was the rounded figure of $3,500.00.

Mr. Thornbury testified that Tract No. 218-2 consisted of .12 acres, all of which was usable. Mr. Thornbury testified that the property was unimproved, in the floodplain, had no practical vehicle access, and had been unused for years except by individuals driving four-wheelers and recreational vehicles over the property. He determined that the highest and best use of the property was for recreational use. Mr. Thornbury testified that the fair market value of that property was the rounded figure of $2,100.00.

Mr. Thornbury testified that Tract No. 218-3 consisted of .11 acres, all of which was not usable because it was creek bank and also partially submerged in the creek. Mr. Thornbury testified that the property was unimproved, in the floodplain, partially underwater, had no practical vehicle access, and had been unused for years except by individuals driving four-wheelers and recreational vehicles over the property. He determined that the highest and best use of the property was for recreational use. Mr. Thornbury testified that the fair market value of that property was the rounded figure of $250.00.

Mr. Thornbury testified that Tract No. 218-4 consisted of .14 acres, all of which was usable. Mr. Thornbury testified that the property was unimproved, in the floodplain, had no practical vehicle access, and had been unused for years except by individuals driving four-wheelers and recreational vehicles over the property. He determined that the highest and best use of the property was for recreational use. Mr. Thornbury testified that the fair market value of that property was the rounded figure of $2,400.00.

Mr. Thornbury testified that Tract No. 231 consisted of .19 acres. Approximately .11 acres of that property was usable and .08 acres was not usable as it was creek bank and also partially submerged in the creek. Mr. Thornbury testified that the property was unimproved, in the floodplain, partially underwater, had no practical vehicle access, and had been unused for years except by individuals driving four-wheelers and recreational vehicles over the property. He determined that the highest and best use of the property was for recreational use. Mr. Thornbury testified that the fair market value of that property was the rounded figure of $2,000.00.

As noted by Mr. Thornbury, to a reasonable degree of certainty, the fair market values of these properties were determined in compliance with the Uniform Standards

of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and the Uniform Appraisal Standards for Federal Land Acquisitions.

## II. CONCLUSIONS OF LAW

"The Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation,' U.S. Const. amend. V . . . ." <u>Hutto v. South Carolina Retirement System</u>, 773 F.3d 536, 551 (4th Cir. 2014). "Just compensation" means the fair market value of the property taken on the date of the taking.  In the case of a permanent taking, the owner is entitled to the fair market value of his property at the time of the taking.  <u>Almota Farmers Elevator & Warehouse Co. v. United States</u>, 409 U.S. 470, 474 (1973).

As the Supreme Court has noted, "Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." <u>Kirby Forest Industries, Inc. v. United States</u>, 467 U.S. 1, 9-10 (1984) (quoting <u>United States v. Miller</u>, 317 U.S. 369, 374 (1943)).  The fair market value of the property is determined based on the condition of the property on the date it was taken, before there was any expenditure, change or improvement thereon by the Government.  <u>Olson v. United States</u>, 292 U.S. 246 (1934).

The unchallenged expert testimony herein estimated the fair market value of the subject properties based upon the prices which have been paid in the market for similar properties in the vicinity of the subject property.  This is an acceptable means for establishing a parcel's fair market value.  <u>United States v. 4.85 Acres of Land</u>, 546 F.3d 613, 617-18 (9th Cir. 2008); <u>United States v. 1,129.75 Acres of Land</u>, 473 F.2d 996, 998 (8th Cir. 1973); <u>United States v. 320.0 Acres of Land</u>, 605 F.2d 762, 798 (5th Cir.1979); <u>United States v. Whitehurst</u>, 337 F.2d 765, 775 (4th Cir. 1964).

Having considered the entirety of the record, and the unchallenged opinions of the lone expert in these consolidated cases, the fair market values of the fee simple interests taken are as follows:

```
Tract No. 218            $3,500.00
Tract No. 218-2          $2,100.00
Tract No. 218-3          $  250.00
Tract No. 218-4          $2,400.00

       .64 Case Total $8,250.00


Tract No. 231            $2,000.00

       .19 Case Total $2,000.00

       Total Amount of Just Compensation
       for Takings in Consolidated Cases       $10,250
```

It is, accordingly, ORDERED that, inasmuch as the amounts of estimated just compensation previously deposited are equal to the adjudicated fair market value of the subject properties, the United States has no further financial obligation to the interested parties.

The court notes the June 15, 2015, "Brief Regarding Ownership of the Condemned Properties," filed by the United States, with accompanying declarations by Kimberly P. Perry and Thomas R. Bradley, attorneys for the United States Army Corps of Engineers. On June 15, 2015, the materials were mailed by the United States to each of the interested parties herein and no mailing was returned. In those materials, it is the position of the United States that ownership of the subject properties is, and the proceeds above should be distributed, as follows:

> Billie Jean Henritze Nance and Betty Jane Henritze Ayers, each an undivided 1/4 interest; and

> The John S. Henritze Testamentary Trust, John Clarke Wallace, Jr. and Katherine Wallace Wetherington, now known as Katherine Osborne Wallace, Co-Trustees, undivided 1/2 interest.

In view of these respective interests, it would appear that the distribution of the proceeds would be as follows:

```
Billie Jean Henritze Nance                $2,562.50
Betty Jane Henritze Ayers                 $2,562.50
The John S. Henritze Testamentary Trust   $5,125.00

                             TOTAL       $10,250.00
```

It is, accordingly, further ORDERED as follows respecting the distribution process:

1. That the United States be, and hereby is, directed to serve upon the interested parties, by certified mail return receipt requested, on or before September 8, 2015, a copy of this memorandum opinion and order;

2. That the interested parties be, and hereby are, noticed that their failure to object in writing to the proposed distribution above, on or before September 28, 2015, will result in the entry of a Judgment directing the Clerk to pay out those sums listed above to the distributes as set forth on page 10 hereof.[2]

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED: August 25, 2015

John T. Copenhaver, Jr.
United States District Judge

---

[2] The Clerk is directed to terminate the motion found at docket entry 25 in civil action 2:14-17688.